**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
    Email: mkane@mcguirewoods.com
Sabrina A. Beldner, Esq. (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Sean M. Sullivan, Esq. (SBN 286368)
    Email: ssullivan@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Tel:   (310) 315-8200
Fax:   (310) 315-8210

Sylvia J. Kim (SBN 258363)
    Email:  skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone:  415.844.9944
Facsimile:  415.844.9922

Attorneys for Defendant
WATKINS AND SHEPARD TRUCKING, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLAN ORTEGA, on behalf of himself, all others similarly situated and on behalf of the general public,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC.; and DOES 1 through 100,<br><br>　　　　Defendants. | CASE NO.<br><br>[San Bernardino County Superior Court Case No. CIVDS1826457]<br><br>**DEFENDANT WATKINS AND SHEPARD TRUCKING, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>Complaint Filed:   October 10, 2018 |

108581698.4

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant WATKINS AND SHEPARD TRUCKING, INC. ("Defendant"), by and through its undersigned counsel, hereby removes the above-entitled action currently pending in the Superior Court of the State of California in and for the County of San Bernardino (the "State Court") to the United States District Court for the Central District of California on the ground that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and all other applicable bases for removal.  In support of its Notice of Removal, Defendant avers as follows:

### STATE COURT ACTION

1.      On October 10, 2018, Plaintiff Allan Ortega ("Plaintiff") filed a Class Action Complaint for Damages, Injunctive Relief, Declaratory Relief, and Restitution against Defendant in the State Court, styled as *ALLAN ORTEGA on behalf of himself all others similarly situated, and on behalf of the general public, v. WATKINS AND SHEPARD TRUCKING, INC., and DOES 1-100,* Case No. CIVDS1826457 (the "State Court Action"), a true and correct copy of which is attached hereto as Exhibit A.

2.      On October 15, 2018, Defendant's registered agent for service of process was personally served with a copy of the Summons and Complaint in the State Court Action.

3.      True and correct copies of the Summons, Complaint, and every other process, pleading, and order served on Defendant in this action to date are attached hereto as the Exhibits identified below:

| **Exhibit** | **Document** |
| --- | --- |
| A | Complaint |
| B | Summons on Complaint |
| C | Civil Case Cover Sheet |

108581698.4

1

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

D       Certificate of Assignment

E       Notice of Case Assignment for All Purposes; Notice of Case Management Conference

F       Guidelines for the Complex Litigation Program

G       Alternative Dispute Resolution Packet

4.      Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

5.      Defendant is informed and believes that it is the only defendant which has been properly served with process in the State Court Action.  Defendants Does 1-100 have yet to be identified and are therefore disregarded for the purposes of this removal.  28 U.S.C. § 1441(a).  As such, Defendant is the only defendant needed to consent to this removal.

## REMOVAL JURISDICTION

6.      This court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-15, and all other applicable bases for removal.

7.      As required by 28 U.S.C. § 1441, Defendant removes this case to the United States District Court for the Central District of California, which is the District Court embracing the place where the State Court Action was filed.

8.      This action has not been previously removed to federal court.

9.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that a Notice of Removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Defendant has timely filed this Notice of Removal within thirty days of the date it was served with and received the Summons and Complaint in this action.

10.     In accordance with 28 U.S.C. § 1446(d), Defendant will provide

108581698.4

2

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## CAFA JURISDICTION

11.    There is no presumption against removal under CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 550, 554 (2014) ("*Dart Cherokee*") ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"). To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id.* at 554, *quoting* S. Rep. No. 109-14, p. 43 (2005).

12.    This Court has original jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d)(2).  Under CAFA, this Court has jurisdiction over class actions where any member of the class is a citizen of a State different from defendant, and where the aggregate amount in controversy exceeds the sum of $5 million, exclusive of interest and costs, and the number of members of all proposed plaintiff classes in the aggregate is at least 100 class members.  28 U.S.C. § 1332(d)(2)-(6).  CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

13.    This action is one which may be removed to this Court by Defendant because: (1) the number of members of all proposed plaintiff classes in the aggregate is more than 100 class members; (2) there is diversity of citizenship between Plaintiff and Defendant; and (3) the amount in controversy for all class members exceeds $5,000,000.00.

## MINIMUM DIVERSITY EXISTS

14.    **Plaintiff's Citizenship.**  At all times during Plaintiff's employment with Defendant, he has had a State of California driver's license, mailing address, and phone number.  Defendant is informed and believes that Plaintiff is residing and intends to indefinitely remain living continuously in California, and that his domicile presently is in California.  *See* Complaint (Exh. A) at ¶ 29 (asserting that

108581698.4

3

NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

"[a]t all relevant times, herein, Plaintiff ALLAN ORTEGA is and was a resident of California."). Accordingly, Plaintiff is a resident and citizen of the State of California for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).[1]

15. **Defendant's Citizenship.** As shown on the California Secretary of State's Business Entity Search website, Defendant is a Montana corporation with its corporate headquarters and principal place of business in Green Bay, Wisconsin:

### 🔍 Business Search - Entity Detail

---

The California Business Search is updated daily and reflects work processed through Tuesday, November 6, 2018. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

**C3692899   WATKINS AND SHEPARD TRUCKING, INC.**

| | |
|---|---|
| **Registration Date:** | 07/10/2014 |
| **Jurisdiction:** | MONTANA |
| **Entity Type:** | FOREIGN STOCK |
| **Status:** | ACTIVE |
| **Agent for Service of Process:** | **THE CORPORATION COMPANY (C2172119)** |
| | To find the most current California registered Corporate Agent for Service of Process address and authorized employee(s) information, click the link above and then select the most current 1505 Certificate. |
| **Entity Address:** | 3101 S PACKERLAND DR. GREEN BAY WI 54313 |
| **Entity Mailing Address:** | 3101 S PACKERLAND DR. GREEN BAY WI 54313 |

*See* URL at https://businesssearch.sos.ca.gov/ (search type: "Corporation Name", search terms entered: "Watkins and Shepard Trucking, Inc."). At its corporate headquarters, Defendant's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there. Thus, Defendant was not and is not a citizen of the State of California but, rather,

---

[1] *See also Mondragon v. Capital One Auto Finance*, 776 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (holding that California was the state of domicile for a party with a California residential address and a valid California drivers' license); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

4

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

was and is a citizen of Montana and Wisconsin for the purpose of determining jurisdiction.[2]

16.    Based on the foregoing, CAFA's minimum diversity requirement is satisfied because Plaintiff purports to be a member of the putative class he seeks to represent and is a citizen of a state (California) that is different from Montana and Wisconsin.

## THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.00

17.    Defendant alleges based on the following calculations that the amount in controversy exceeds $5,000,000.00 only for the purpose of establishing subject matter jurisdiction under CAFA.  Defendant's allegations and calculations are not admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's allegations, or whether a class action is proper.[3]

18.    A removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy.  Evidentiary submissions are not required unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the court:

> In sum, as specified in 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

_____

[2] *See Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1192 (2010) (the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and in practice, the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination."); *Tosco Corp. v. Communities for a Better Env't,* 236 F.3d 495, 499 (9th Cir. 2001).

[3] *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015), *quoting Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'").

*Dart Cherokee*, 135 S.Ct. at 554.

19.    The plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse*, 775 F.3d at 1202 (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what a court or jury might later determine to be the actual amount of damages, if any.[4]

20.    Furthermore, as recently confirmed by the Ninth Circuit in *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15, 417-18 (9th Cir. 2018), "the amount in controversy is not limited to damages incurred prior to removal…[r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." Accordingly, the amount in controversy may include all relief available to Plaintiff through the end of trial.

21.    Plaintiff purports to bring the California state law claims alleged in this action pursuant to California Code of Civil Procedure § 382 as a class action, and seeks class certification on behalf of the following Proposed Class:

> "All persons who are employed or have been employed by DEFENDANTS in the State of California s hourly, Non-Exempt warehouse workers, lead warehouse workers, forklift operators, freight handlers, loaders, unloaders, and/or other similar job designations and titles during the period of the relevant statute of limitations."

---

[4] *See Ibarra*, 775 F.3d at 1198 n. 1, *citing Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal"); *St. Paul Mercury*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of America*, 2014 U.S. Dist. LEXIS 168932, *4 (C.D. Cal. Dec. 5, 2014) (citing cases holding that in measuring the amount in controversy, the court assumes that a jury will return a verdict on all claims asserted in the complaint, and that the ultimate inquiry is what the complaint alleges, not what the defendant might actually owe).

108581698.4

6

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

*See* Exh. A (Complaint), ¶ 48.

## Size Of Proposed Class

22.    According to the Complaint, the Proposed Class is "so numerous that joinder of all the members of the Class is impracticable." *See* Exh. A (Complaint), ¶ 28(a).    Indeed, there are more than 100 current or former California-based warehouse workers who worked for Defendant during the proposed class period and ostensibly are within the definition of Plaintiff's Proposed Class, as Defendant presently understands it.  Therefore, the aggregate membership of the proposed class is at least 100 as required under CAFA.  *See* 28 U.S.C. § 1332(d)(5)(B).

## CAFA Amount In Controversy

23.    The claims of the individual members in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11).   In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. 109-14, at 42.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[5]

24.    Defendant's data for its California-based warehouse employees (the "Warehouse Workers"), which is presently available to Defendant, from October 10, 2014 through October 10, 2018, was used to determine the CAFA amount in

---

[5] S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

controversy for purposes of this Notice of Removal, and that voluminous data can be summarized as follows:

a. For the **one-year** period ending on the date of the filing of the Complaint in this action (October 10, 2017 through October 10, 2018):

    i. At least **298 Warehouse Workers** worked for Defendant.

    ii. The Warehouse Workers worked an **average of 8.7 hours per day**.

    iii. The Warehouse Workers were issued a total number of **5,668 payroll checks**.

b. For the **three-year** period ending on the date of the filing of the Complaint in this action (October 10, 2015 through October 10, 2018):

    i. At least **404 Warehouse Workers** worked for Defendant. Of those 404 Warehouse Workers, **238 Warehouse Workers have terminated their employment** with Defendant.

    ii. The Warehouse Workers worked an average of **8.96 recorded hours per workday**.

    iii. The Warehouse Workers were paid at an **average effective hourly rate of $14.94**.

c. For the **four-year** period ending on the date of the filing of the Complaint in this action (October 10, 2014 through October 10, 2018):

    i. At least **414 Warehouse Workers** worked for Defendant.

    ii. The 414 Warehouse Workers worked for Defendant for an **aggregate total of 77,651 calendar days**.

    iii. The Warehouse Workers worked an average of **9.01**

**recorded hours per workday**.

iv.    The Warehouse Workers were paid at an **average effective hourly rate of $14.81**.

***First and Second Causes of Action for Failure to Pay Straight Time and Overtime Wages***

25.    Plaintiff's **First Cause of Action** for **Failure to Pay All Straight Time Wages** seeks damages for unpaid straight time wages on three separate theories of unlawful conduct by Defendant: (1) unlawful rounding of time; (2) uncompensated work pre- and post-shift; and (3) automatic deductions of 30-minute meal periods although the Warehouse Workers worked through their meal breaks. Plaintiff's Complaint alleges that Defendant "had a continuous policy of not paying Plaintiff and those similarly situated for all hours worked. Specifically, [Defendant] ha[s] not paid for all time employees worked throughout the day. Including, but not limited to rounding, before 'shifts' start, after 'shifts' end, and/or any other time in the day when employees were performing work tasks, subject to the control of employer and/or otherwise had work duties." *See* Exhibit A (Complaint) at ¶ 80. *See also id.* at ¶¶ 5, 6, 8, 30, 83, 84. Plaintiff's Complaint further alleges that Defendant has "a continuous and consistent policy of clocking-out Plaintiff and those similarly situated for a thirty (30) minute meal period, even though Plaintiff and all members work through their meal periods. Thus, [Defendant] do[es] not pay Plaintiff and each and every member of the Class for all time worked each and every day they work without a meal period and have time deducted." *Id.* at ¶ 81. *See also id.* at ¶¶ 7, 9, 31, 82. Additionally, Plaintiff's Complaint alleges Defendant "shave[s]/steal[s] earned wages from Plaintiff and each and every member of the Class each and every day they work." *Id.* at ¶ 85. *See also id.* at ¶ 82. Based on the foregoing allegations, Plaintiff seeks to recover the amount of allegedly unpaid straight wages from Defendant. *Id.* at ¶¶ 86, 87 and Prayer for Relief at ¶ D.

26.    Similarly, Plaintiff's **Second Cause of Action** allegation **Failure to**

108581698.4

9

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

**Pay All Overtime Wages** alleges that Defendant "failed to pay overtime when employees worked over eight (8) hours per day and when employees worked over forty (40) hours per week." Plaintiff's claim for unpaid overtime is based on the same alleged conduct, and theories of liability, underlying Plaintiff's claim for unpaid straight time wages referenced above. *See* ¶¶ 5, 6, 7, 8, 94, 95. Plaintiff seeks to recover the amount of allegedly unpaid overtime wages from Defendant. *Id.* at Prayer for Relief at ¶ D.

27.    Plaintiff's **Eighth Cause of Action** alleging **Violations of Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.)** ("UCL"), purports to seek restitution of such unpaid straight time and overtime wages. *Id.* at ¶¶ 7, 9, 16, 30, 31, 159, 160, 164 and Prayer for Relief at ¶ M. This purported claim is subject to a four-year statute of limitations.

28.    In light of the fact that the Warehouse Workers worked, on average, 9.01 hours a day during the four year limitations period, any allegedly unpaid time for work as alleged by Plaintiff in his First, Second and Eighth Causes of Action constitutes unpaid overtime and would be calculated at the overtime rate for the four year limitations period. For purposes of determining the amount in controversy for the alleged unpaid overtime and straight time wage compensation underlying Plaintiff's First, Second and Eighth Causes of Action, and based on the three distinct theories of liability alleged as the bases for Plaintiff's claims for unpaid straight and overtime wages alleged in the Complaint, Defendant has reasonably and conservatively assumed that each of the Warehouse Workers will claim to have worked *only*: (1) six (6) *minutes* (0.10 hours) of unpaid time per day worked based on Plaintiff's allegations that Defendant <u>unlawfully rounded</u> the Warehouse Workers' time; (2) six (6) *minutes* (0.10 hours) of unpaid time per day worked based on Plaintiff's allegations that the Warehouse Workers' performed <u>uncompensated work pre- and post-shift</u>; and (3) six (6) *minutes* (0.10 hours) of unpaid time per day worked based on Plaintiff's allegations that the Warehouse Workers worked through

their meal periods but Defendant automatically deducted thirty minutes of their time for said meal periods. *See, e.g., Altamirano v. Shaw Indus.*, 2013 U.S. Dist. LEXIS 84236, at *23, 26-27 (N.D. Cal. June 14, 2013) (finding assumption of 6 minutes of unpaid time per day for purposes of amount in controversy calculations to be "rather reasonable" where plaintiff alleged the defendant rounded all employees' time).[6] Thus, for removal purposes, Defendant conservatively utilizes 0.3 hours of alleged unpaid time per day.[7]

29.     Accordingly, Defendant calculates the amount in controversy for the alleged unpaid overtime and minimum wages as follows:

| Average Hourly Overtime Rate (Average Effective Hourly Rate [$14.81] x 1.5) | | Off-the-Clock Hours Per Day Worked | | Total Workdays | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $22.22 | x | 0.3 | x | 77,651 | = | $517,621.57 |

30.     Accordingly, the amount in controversy on Plaintiff's First and Second Causes of Action for straight time and overtime wage violations is **$517,621.57**. Notably, the amount in controversy on these claims and Plaintiff's other claims as discussed below are *conservatively* calculated given that they are calculated only up to the date the Complaint was filed, even though they can properly be calculated to include relief that could be obtained through the end of trial. *See Chavez*, *supra*, 888 F.3d 413 at 414-15, 417-18.

---

[6] If challenged, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy.

[7] This figure is exceedingly conservative in light of Plaintiff's allegation that the Warehouse Workers worked through their meal breaks but were deducted 30-minutes of time which, by itself, reasonably results 0.5 unpaid hours each day.

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

***Third Cause of Action for Failure to Provide Meal Periods***

31.     Plaintiff's **Third Cause of Action** for **failure to provide meal periods** alleges that Defendant "had a consistent policy of requiring [the Warehouse Workers], including Plaintiff, to work through meal periods and work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the meal period is not provided, or other compensation, as required by California's state wage and hour laws." *See* Exh. A (Complaint), ¶ 9. *See also id.* at ¶¶ 31, 32, 102. The Complaint also alleges that Defendant's "business model is such that [the Warehouse Workers] were assigned too much work and insufficient help due to chronic understaffing to be able to take meal periods. Thus, [the Warehouse Workers] are not able to take meal periods." *Id.* at 103. Similarly, the Complaint alleges that "[t]hroughout the statutory period, [Defendant] had a pattern and practice of assigning too much work to be completed in too short of time frames, resulting in Plaintiff and those similarly situated not being able to take meal periods." *Id.* at 104. *See also id.* at ¶¶ 107-110. Additionally, the Complaint alleges that Defendant's conduct "routinely resulted in Plaintiff and [the Warehouse Workers] not being able to take a meal period, if at all, until after the fifth hour" and "[the Warehouse Workers] routinely and regularly being forced to eat their meals" while working. *Id.* at ¶¶ 105, 106. *See also id.* at ¶ 113 ("…Plaintiff and those similarly situated routinely worked through their meal periods…"). Plaintiff seeks recovery of "premium wages" and "compensation for not being provided paid meal periods." *See id.* at ¶ 116 and Prayer for Relief at ¶ G.

32.     Plaintiff's **Eighth Cause of Action** alleging **violations of the UCL** purports to seek restitution of such unpaid meal breaks and meal break premiums. *Id.* at ¶¶ 159, 162, 164 & Prayer for Relief at ¶ M. This purported claim is subject to a four-year statute of limitations.

33.     Plaintiff's allegations can be reasonably interpreted to mean that he and

the Warehouse Workers *never* received *any* legally compliant meal breaks and were *never* paid for any such non-compliant breaks.  On that basis, Defendant can reasonably assume that each of the Warehouse Workers will claim to have not been provided and paid for at least one compliant meal break for each day they worked during the four-year period prior to the filing of the Complaint.[8]  *See*, *e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149-50 (C.D. Cal. 2010) (Collins, J.) (holding that the defendant properly utilized a 100% violation rate for missed meal and rest breaks when calculating the amount in controversy for CAFA removal purposes where the plaintiff had alleged that the class members "consistently" worked without meal breaks); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (King, J.) (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violate rate is an impermissible assumption"); *Duberry v. J. Crew Group, Inc.*, 2015 WL 4575018, *6 (C.D. Cal. July 28, 2015) (Wilson, J.) (approving use of 100% violation rate in light of similar allegations of consistent violations occurring); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, *3 (C.D. Cal. May, 14, 2015) (Carney, J.) (finding defendant could logically assume a 100% violation rate where plaintiff alleged defendant "'consistently' failed to provide its employees with meal and rest periods."); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *6 (C.D. Cal. Apr. 28, 2015) (Birotte, Jr., J.) (approving use of 100% violation rate where complaint alleged meal break violations occurred at "all material times.").

34.    Therefore, Defendant calculates the amount in controversy on the meal break putative class action claims as follows:

---

[8] As set forth above, the Warehouse Workers worked an average of 9.01 hours per day.  Thus, pursuant to the allegations in the Complaint, each Warehouse Worker would claim to have not been provided at least one meal break each work day.

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

| Average Effective Hourly Rate | | Violations Per Day | | Total Days Worked | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $14.81 | x | 1 | x | 77,651 | = | $1,150,011.31 |

Accordingly, the amount in controversy on the **Third and Eighth Causes of Action** is at least **$1,150,011.31**.

### *Fourth Cause of Action for Failure to Authorize and Permit Rest Periods*

35.    Plaintiff's **Fourth Cause of Action** for **failure to authorize and permit rest periods** alleges that Defendant had and has "a consistent policy and/or practice of requiring [the Warehouse Workers], including Plaintiff, to work over four hours, or major fraction thereof, without a 10 minute rest period, an failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the rest period is not provide[d], or other compensation, as required by California's state wage and hour laws." *See* Exh. A (Complaint), ¶ 12. *See also id.* at ¶ 33.  Plaintiff further alleges that "[a]t all relevant times, [Defendant] failed to authorize and/or permit rest period time based upon the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" and that Defendant's "business model was such that [the Warehouse Workers] were assigned too much work that could not be reasonably completed within their assigned shift, work, and/or route, resulting in [the Warehouse Workers] routinely and regularly being forced to work through their rest periods."  *Id.* at ¶¶ 121, 122.  Additionally, Plaintiff alleges that "[t]hroughout the statutory period, [Defendant] had a pattern and practice of assigning too much work to be completed in too short of time frames, resulting in Plaintiff and [the Warehouse Workers] not breaking [] to take rest periods," that Defendant's "uniform policies and practices resulted in non-exempt employees not receiving rest breaks," and that "Plaintiff and [the Warehouse Workers] routinely worked through their rest periods…"  *Id.* at ¶¶ 123, 125, 128.  Plaintiff seeks recovery of "premium

108581698.4

14

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

wages" and "compensation for not being provided paid rest breaks." *See id.* at ¶ 129 and Prayer for Relief at ¶ F.

36.   Plaintiff's **Eighth Cause of Action** alleging **violations of the UCL** purports to seek restitution of such unpaid rest breaks and rest break premiums. *Id.* at ¶¶ 159, 162, 164 & Prayer for Relief at ¶ M.  This purported claim is subject to a four-year statute of limitations.

37.   Plaintiff does not allege that he or the Warehouse Workers were *ever* compensated separately for rest breaks, *ever* received *any* legally compliant rest breaks or were *ever* paid for any such non-compliant breaks.  On that basis, Defendant reasonably assumes that each of the Warehouse Workers will claim to have not been provided and/or paid for at least one compliant rest break for each calendar day they worked for Defendant.[9]  *See*, *e.g.*, *Coleman*, *supra*, 730 F.Supp.2d at 1149-50; *Mejia*, *supra*, 2015 WL 2452755 at *4; *Duberry*, *supra*, 2015 WL 4575018 at *6; *Lopez*, *supra*, 2015 WL 2342558 at *3; *Sanchez*, 2015 WL 12765359 at *6.

38.   Therefore, Defendant calculates the amount in controversy on the rest break putative class action claim as follows:

| Average Effective Hourly Rate | | Violations Per Day | | Total Days Worked | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $14.81 | x | 1 | x | 77,651 | = | $1,150,011.31 |

Accordingly, the amount in controversy on the **Fourth and Eighth Causes of Action** is at least **$1,150,011.31**.

---

[9] As set forth above, the Warehouse Workers worked an average of 9.01 hours per day.  Thus, pursuant to the allegations in the Complaint, each Warehouse Worker would claim to be entitled to at least two rest breaks each work day.

***Fifth Cause of Action for Failure to Provide Recovery Periods***

39.     Plaintiff's **Fifth Cause of Action** for **failure to authorize and permit recovery periods** alleges that Defendant had and has "a consistent policy and practice of failing to provide Plaintiff and [the Warehouse Workers] with cool down recovery periods in accordance with California Code of Regulations, Title 8, section 3395." *See* Exh. A (Complaint), ¶ 13.  *See also id.* at ¶ 34.  Plaintiff further alleges that Defendant "failed to permit access to shade and preventative cool down rest and/or recovery periods to Plaintiff and [the Warehouse Workers] when the temperature reached eighty (80) degrees Fahrenheit" and Defendant "failed to permit, allow, or encourage Plaintiff and the [Warehouse Workers] to take preventative cool down recovery periods in the shade to protect against overheating when the temperature exceeds eighty (80) degree Fahrenheit." *Id.* at ¶ 134.  *See also id.* at ¶¶ 135, 136.  Plaintiff seeks recovery of "premium wages" and "compensation for not being provided paid preventative cool down rest and/or recovery periods." *See id.* at ¶ 137 and Prayer for Relief at ¶ F.  Pursuant to Cal. Labor Code § 226.7, employers must provide one hour of pay to employees for missed recovery or "cooldown" periods.

40.     Plaintiff's **Eighth Cause of Action** alleging **violations of the UCL** purports to seek restitution of such unpaid recovery premiums.  *Id.* at ¶¶ 159, 162, 164 & Prayer for Relief at ¶ M.  This purported claim is subject to a four-year statute of limitations.

41.     Pursuant to data obtained from the National Centers for Environmental Information, National Oceanic and Atmospheric Administration's Climate Data Online Search, in the four-year period prior to the filing of Plaintiff's Complaint, the temperature in San Bernardino, California exceeded 80 degrees Fahrenheit on 773 of 1,462 days, approximately **52.87%** of that time period.[10]  Therefore, based on

----

[10]     Data     available     at     URL     at     https://www.ncdc.noaa.gov/cdo-

Plaintiff's allegations that cool down or recovery periods were not provided when the temperature exceeded 80 degrees Fahrenheit, Defendant calculates the amount in controversy on the recovery period putative class action claim as follows:

| Average Effective Hourly Rate | | Rate of Days Exceeding 80°F | | Total Days Worked | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $14.81 | x | 52.78% | x | 77,651 | = | $606,975.97 |

42.    Accordingly, the amount in controversy on the **Fifth and Eighth Causes of Action** is at least **$606,975.97**.

### *Sixth Cause of Action for Wage Statement Violations*

43.    Plaintiff's **Sixth Cause of Action** for **inaccurate wage statements** alleges that Defendant failed to provide Plaintiff and the Warehouse Workers with complete and accurate wage statements and, on that basis, Plaintiff seeks to recover statutory penalties for the proposed class pursuant to Cal. Lab. Code § 226. *See* Exh. A (Complaint), ¶¶ 19, 35, 139-140, 143-145 & Prayer for Relief at ¶ I. Pursuant to Cal. Labor Code § 226(e) ("Section 226(e)"), penalties for such wage statement violations may be sought in an amount equal to fifty dollars ($50) per employee for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent period, not to exceed $4,000 per employee. This claim is subject to a one-year statute of limitations.

44.    Plaintiff alleges that Defendant "ha[s] knowingly and intentionally failed to comply with Labor Code section 226, subdivision (a), on each and every

---

web/search?datasetid=GHCND, with the following inputs: (1) Weather Observation Type/Dataset – Daily Summaries; (2) Date Range – October 10, 2014 to October 10, 2018; Search for – Stations; (4) Enter a Search Term – Riverside Municipal Airport (Riverside Municipal Airport is located in San Bernardino County). Select search > select add to cart next to Riverside Municipal Airport option and proceed to completing the free checkout process. Data is sent via email.

108581698.4

17

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

wage statement provided to Plaintiff ALLAN ORTEGA and [the Warehouse Workers]." *See* Exh. A (Complaint), ¶ 140. *See also id.* at ¶¶ 19, 35, 143.

45.     Because Plaintiff's inaccurate wage statement claim expressly alleges wage statement violations "on each and every wage statement," it is reasonable to interpret Plaintiff's Complaint as alleging that he and the Warehouse Workers *never* received accurate wage statements from Defendant.  Defendant's above-summarized data shows that at least 298 Warehouse Workers worked for Defendant during the one-year period ending on the date of the filing of the Complaint in this action and that they received an aggregate total of 5,668 payroll checks during that time frame. Therefore, the amount in controversy on Plaintiff's Sixth Cause of Action for inaccurate wage statement penalties is **$551,900**:

> 298 initial pay periods x $50 = $14,900
>
> 5,370 subsequent pay periods (5,668 – 298) x $100 = $537,000
>
> $537,000 + $14,900 = $551,900 (or, an average of $1,852.01 per Warehouse Worker)

### *Seventh Cause of Action for Failure to Pay All Wages Due at the Time of Termination from Employment*

46.     Plaintiff's **Seventh Cause of Action** seeks **waiting time penalties** pursuant to Cal. Lab. Code § 203 in the amount of "thirty (30) days' worth of wages as a penalty under Labor Code section 203…" for Plaintiff and former Warehouse Workers.  *See* Exh. A (Complaint), ¶¶ 15, 36, 151-156 and Prayer for Relief at ¶ K. This claim is subject to a three-year statute of limitations.

47.     As set forth above, at least 238 Warehouse Workers terminated their employment with Defendant during the three-year period ending on the date of the filing of the Complaint in this action, and their average effective hourly rate paid during that time period was $14.94.  Additionally, while, as set forth above, the Warehouse Workers worked an average of 8.96 hours per day during this time, for purposes of removal, Defendant utilizes a conservative 8-hour workday.

108581698.4

18

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

Accordingly, the amount in controversy on Plaintiff's Seventh Cause of Action for statutory waiting time penalties is **$853,372.80** ($14.94 x 8 hours x 30 days x 328 terminated Warehouse Workers).

### ***Statutory Attorneys' Fees***

48.     Plaintiff also seeks **statutory attorneys' fees** in connection with his claims against Defendant.  *See* Exh. A (Complaint), ¶¶ 26, 86, 95, 116, 129, 137, 144, 156, 173, and Prayer for Relief at ¶ R.  Indeed, Plaintiff's Complaint cites to and relies on Cal. Lab. Code § 218.5, which provides for reasonable attorneys' fees and costs to the prevailing party in any action brought for the non-payment of wages.  *Id.* at ¶¶ 78, 90.  In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Chavez*, *supra*, F.3d at 416; *Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  Where, as here, a common fund recovery potentially is sought, the Ninth Circuit uses a benchmark rate of 25% of the potential award as an estimate for attorneys' fees.  *See, e.g.*, *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 Fed.Appx. 452, 457 (9th Cir. 2009).  Utilizing Defendant's calculations of the amount in controversy on Plaintiff's First through Eighth Causes of Action on behalf of the Warehouse Workers and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendant calculates the amount in controversy on Plaintiff's **statutory attorneys' fees claim** to be no less than **$1,207,473.24** [($517,621.57 + $1,150,011.31 + $1,150,011.31 + $606,975.97 + $551,900 + $853,372.80) x 25%].

49.     Based on the foregoing calculations, the **total amount in controversy** on Plaintiff's First through Eighth Causes of Action for the putative class action claims of the Warehouse Workers is calculated to be at least **$6,037,366.20**, which exceeds the $5 million jurisdictional threshold under CAFA:

| **Cause of Action / Claim** | **Amount in Controversy** |
|---|---|
| Straight Time and Overtime Wage Violations (First, Second & Eighth Causes of Action) | $517,621.57 |
| Meal Period Violations (Third & Eighth Causes of Action) | $1,150,011.31 |
| Rest Break Violations (Fourth & Eighth Causes of Action) | $1,150,011.31 |
| Recovery Period Violations (Fifth & Eighth Causes of Action) | $606,975.97 |
| Wage Statement Violation Penalties (Sixth Cause of Action) | $551,900 |
| Waiting Time Penalties (Seventh Cause of Action) | $853,372.80 |
| Statutory Attorneys' Fees (25%) | $1,207,473.24 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$6,037,366.20**[11] |

50.     Defendant expressly reserves the right to further refine these and/or include any other additional amounts in controversy, should any aspect of the

---

[11] Defendant's amount in controversy is exceedingly conservative and underestimated because it does not "encompass[] all relief a court may grant on that complaint if the plaintiff is victorious" given that: (1) it is only calculated through the filing of the Complaint as opposed to through the resolution of this action at trial; and (2) it does not account for any amounts in controversy on Plaintiff's Ninth Cause of Action for Failure to Provide a Copy of Personnel Records Within 30 Days of Receiving Personnel File Requests from Employees. *See Chavez, supra*, 888 F.3d 413 at 414-15, 417-18.

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

amount in controversy set forth herein be challenged.

## VENUE

51.     This is a civil action brought in a California state court.  Defendant is informed and believes that the events allegedly giving rise to this action occurred within this judicial district.  Accordingly, as the State Court Action is now pending in San Bernardino County, California, Defendant is entitled, pursuant to 28 U.S.C. § 1441(a), to remove this action to the United States District Court for the Central District of California.

## NOTICE TO PLAINTIFF AND STATE COURT

52.     Contemporaneously with the filing of this Notice of Removal in this Court, written notice of such filing will be served on Plaintiff's counsel of record as reflected in the attached Certificate of Service.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California in and for the County of San Bernardino.

WHEREFORE, Defendant respectfully requests that the above-captioned action now pending in the State Court be removed to this United States District Court.

DATED: November 14. 2018          **McGuireWoods LLP**


Bv: _____ /s/ Matthew C. Kane _____
          Matthew C. Kane, Esq.
          Sabrina A. Beldner, Esq.
          Sylvia J. Kim, Esq.
          Sean M. Sullivan, Esq.

          Attorneys for Defendant
          WATKINS AND SHEPARD
          TRUCKING. INC.

108581698.4

21

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067.

On November 14, 2018, I served the following document described as **DEFENDANT WATKINS AND SHEPARD TRUCKING, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

William Turley                                   *Attorneys for Plaintiff*
The Turley & Mara Law Firm APLC                  *Allan Ortega*
7428 Trade Street
San Diego, CA 92121

☒  **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐  **BY FACSIMILE:** At approximately _____, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was 310.315.8210. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐  **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐  **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 14, 2018, at Los Angeles, CA.

_____
Matthew Whitney

108581698.4

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**